**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,**<br><br>**RARE BREED TRIGGERS, INC., a Texas corporation,**<br><br>**and**<br><br>**RBTM LLC, a Wyoming limited liability company**<br><br>**Plaintiffs.**<br><br>**v.**<br><br>**MAS Defense LLC, a North Carolina limited liability company,**<br><br>**Ghost Gun Jigs LLC, a North Carolina limited liability company,**<br><br>**and**<br><br>**Mario Sbardella, Sr., an individual,**<br><br>**Defendants.** | ) | CASE NO. ______________<br><br>**COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

This is an action for patent infringement in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse MAS Defense LLC, Ghost Gun Jigs LLC, and Mario Sbardella, Sr. (collectively, "Defendants") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159, 10,514,223, 11,724,003, 12,036,336, 12,274,807, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition as follows:

## PARTIES

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4. Upon information and belief, MAS Defense LLC is a limited liability company organized under the laws of North Carolina with an address of 658 Griffith Rd #111, Charlotte, NC 28217.

5. Upon information and belief, Ghost Gun Jigs LLC is a limited liability company organized under the laws of North Carolina with an address of 10020 Monroe Road, Ste 170-283, Charlotte, NC 28105.

6. Upon information and belief, Mario Sbardella, Sr. is an individual residing at 400 Smokey Hollow Dr., Waxhaw, NC 28173, who is an owner and the president of MAS Defense LLC and Ghost Gun Jigs LLC and directs their operations, including directing MAS Defense LLC and Ghost Gun Jigs LLC to sell products in violation of the Asserted Patents and FRT Marks.

## JURISDICTION AND VENUE

7. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action

arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

9. Personal jurisdiction over Defendants is proper in this District because the Defendants reside in and have a regular and established place of business in this District.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in or have committed acts of infringement and have a regular and established place of business in this District.

## BACKGROUND

11. This lawsuit asserts (a) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159, 10,514,223, 11,724,003, 12,036,336, 12,274,807, and 12,636,403; and (b) trademark infringement, false designation of origin, and unfair competition with regard to Plaintiffs' well-known FRT® trademark, among others.

12. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

13. The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

14. The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit C.

15. The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable. A true and correct copy of the '223 Patent is attached as Exhibit D.

16. The ’003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the ’003 Patent is valid and enforceable. A true and correct copy of the ’003 Patent is attached as Exhibit E.

17. The ’336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the ’336 Patent is valid and enforceable. A true and correct copy of the ’336 Patent is attached as Exhibit F.

18. The ’807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the ’807 Patent is valid and enforceable. A true and correct copy of the ’807 Patent is attached as Exhibit G.

19. The ’403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the ’403 Patent is valid and enforceable. A true and correct copy of the ’403 Patent is attached as Exhibit H.

20. ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office (“USPTO”).

21. RBTM is the owner of the trademark “FRT” and variations thereof. Since at least 2020, the FRT ® mark has been used by Plaintiff Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT ® trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed’s products. In addition to strong common law rights in the FRT ® trademark, RBTM also owns the following federally registered trademarks and pending applications, including the right to enforce the marks against infringers:

| Mark | Goods | App. no. | Reg. no. | App. date | Reg. date |
|---|---|---|---|---|---|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |
| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Plaintiffs' common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks."

22. Rare Breed is the exclusive licensee of the Asserted Patents and the FRT Marks.

23. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

24. Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

**THE INVENTIONS**

25. A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement

of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

26. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

27. In contrast, in what Plaintiffs have coined a "forced reset" trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

28. The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and

uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

29. The ’784 Patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a “deflectable extension of the locking member that is actuated by forward movement of the bolt carrier,” among other innovations as explicitly claimed. Certain inventions of the ’784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

30. The ’223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

31. The ’003 Patent, the ’336 Patent, the ’807 Patent, and the ’403 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) “forced reset” semiautomatic mode.

32. The claims of the patents define the scope of the patented inventions.

## THE INFRINGING DEVICES

33. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including the following (collectively, the “Infringing Devices”):

## I. The Atrius Selector

34. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale a (3-Position) "Atrius Forced Reset Selector" ("the Atrius Selector"), which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

35. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale the Atrius Selector via the website https://www.masdefense.com/searchresults.asp?Search=Atrius&Submit=Submit; and https://www.ghostgunjigs.com/searchresults.asp?Search=Atrius&Submit=, in multiple variants, including at least as a standalone product.

36. Exemplary images taken from Defendants' websites are shown below:

MAS Defense LLC | Contact | Log-In | Account | 0

*** SALE *** | BRANDS | AR-9 | AR-15 | AR-10 | GLOCK STYLE PARTS | SIG SAUER | SIGHTS | TOOLS | SWAG

HOME > AR-15 > AR-15 LOWER PARTS >

**ATRIUS FORCED RESET SELECTOR FOR AR-15**

ATRIUS



MASDEFENSE.COM

View Larger Photo

*MSRP*: $250.00
Our Price: $225.99
SALE PRICE: $179.99

**Price with Selected Options**: **$179.99**

**Stock Status**: In Stock

Product Code: ADG-FRS

CHOOSE YOUR OPTIONS:

***** ADD A HEAVY BUFFER:**

Click to view another *** ADD A HEAVY BUFFER:

DO NOT ADD A HEAVY BUFFER.

**I UNDERSTAND AND AGREE:**

- [ ] I AM 18 YEARS OF AGE OR OLDER. 21+ IF MY STATE REQUIRES AND FOR PISTOL PARTS.
- [ ] MY SHIPPING ADDRESS IS NOT LOCATED IN ANY OF THE CITIES OR STATES LISTED BELOW.
- [ ] MY BILLING ADDRESS MATCHES MY SHIPPING ADDRESS. ***NO EXCEPTIONS!
- [ ] A 15% CANCELLATION FEE WILL APPLY IF WE HAVE TO CANCEL YOUR ORDER.

Qty: 1

ADD TO CART

Add To Wishlist

MAS Defense LLC
Contact
Log-In | Account
0
*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG
HOME > AR-15 > AR-15 LOWER PARTS >
ATRIUS AMBIDEXTROUS FORCED RESET SELECTOR FOR AR-15
ATRIUS
MASDEFENSE.COM
View Larger Photo
MSRP: $300.00
Our Price: $274.99
SALE PRICE: $209.99
Price with Selected Options: $209.99
Stock Status: In Stock
Product Code: ADG-FRS-AMBI
CHOOSE YOUR OPTIONS:
*** ADD A HEAVY BUFFER:
Click to view another *** ADD A HEAVY BUFFER:
DO NOT ADD A HEAVY BUFFER.
I UNDERSTAND AND AGREE:
I AM 18 YEARS OF AGE OR OLDER. 21+ IF MY STATE REQUIRES AND FOR PISTOL PARTS.
MY SHIPPING ADDRESS IS NOT LOCATED IN ANY OF THE CITIES OR STATES LISTED BELOW.
MY BILLING ADDRESS MATCHES MY SHIPPING ADDRESS. ***NO EXCEPTIONS!
A 15% CANCELLATION FEE WILL APPLY IF WE HAVE TO CANCEL YOUR ORDER.
Qty: 1
ADD TO CART
Add To Wishlist




GHOST GUN JIGS
Search...
MY CART 0
*** SALE ***
All Products
Brands
Glock
AR-15
SIG P320
Home > *** SALE *** >
ATRIUS
GhostGunJigs.com
Larger Photo
ATRIUS FORCED RESET SELECTOR FOR AR-15
MSRP: $250.00
Our Price: $225.99
Sale Price: $179.99
Stock Status:In Stock!
Product Code: ADG-FRS
I UNDERSTAND AND AGREE:
I AM 18 YEARS OF AGE OR OLDER. 21+ FOR ALL PISTOL PARTS OR IF MY STATE REQUIRES.
MY SHIPPING ADDRESS IS NOT IN: CA, CO, CT, DE, DC, HI, IL, MD, NJ, NY, OR, PA City, RI, WA.
MY BILLING ADDRESS MATCHES MY SHIPPING ADDRESS. ***NO EXCEPTIONS!
A 15% CANCELLATION FEE WILL APPLY IF WE HAVE TO CANCEL YOUR ORDER.
Qty:
- 1 +
Add To Cart
Add To Wishlist




37. The Atrius Selector can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

## II. **The Disruptor**

38. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale a (3-Position) Disruptor ("the Disruptor"), which embodies the technology claimed in at least the '223, '003, '336, '807, and '403 Patents.

39. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale the Disruptor via the websites https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm and https://www.ghostgunjigs.com/PARTISAN-TRIGGERS-DISRUPTOR-p/pt-disruptor.htm, in multiple variants, including at least as a standalone product.

40. Exemplary images taken from Defendants' websites are shown below:

MAS Defense LLC | Contact | Log-In | Account | 0

*** SALE *** | BRANDS | AR-9 | AR-15 | AR-10 | GLOCK STYLE PARTS | SIG SAUER | SIGHTS | TOOLS | SWAG

HOME > AR-15 > AR-15 LOWER PARTS >

## THE TRIGGERD COMPANY DISRUPTOR FORCED RESET TRIGGER - FRT AR-15 PARTISAN




View Larger Photo

Alternative Views:




*MSRP*: $325.00
Our Price: $299.99
SALE PRICE: $254.99

**Price with Selected Options**: **$254.99**

**Stock Status**: In Stock

Product Code: PT-DISRUPTOR

CHOOSE YOUR OPTIONS:

***** ADD A HEAVY BUFFER:**

Click to view another *** ADD A HEAVY BUFFER:

DO NOT ADD A HEAVY BUFFER.

**I UNDERSTAND AND AGREE:**

- [ ] I AM 18 YEARS OF AGE OR OLDER. 21+ IF MY STATE REQUIRES AND FOR PISTOL PARTS.
- [ ] MY SHIPPING ADDRESS IS NOT LOCATED IN ANY OF THE CITIES OR STATES LISTED BELOW.
- [ ] MY BILLING ADDRESS MATCHES MY SHIPPING ADDRESS. ***NO EXCEPTIONS!
- [ ] A 15% CANCELLATION FEE WILL APPLY IF WE HAVE TO CANCEL YOUR ORDER.

Qty: 1

ADD TO CART

Add To Wishlist




41. The Disruptor also operates in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector between positions.

42. When the Disruptor operates in the "forced reset" mode, the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger

member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

43. When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

44. When in the "forced reset" semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be mechanically moved to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

**INFRINGEMENT OF THE FRT MARKS**

45. On information and belief, Defendants are distributing, advertising, and/or selling products that do not originate with Plaintiffs but that nonetheless bear or are promoted in association with the FRT Marks.

46. Defendants are falsely associating their products with Plaintiffs' well-known FRT Marks.

47. Defendants are advertising their products as "FRT" as shown at: https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm; https://www.masdefense.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm; https://www.masdefense.com/ATRIUS-AMBI-FORCED-RESET-SELECTOR-p/adg-frs-ambi.htm; https://youtu.be/5o5zzdEWIGw?si=Z0XEnpStM5x3_61o. Exemplary images (highlighted) are shown below:

MAS Defense LLC | Contact | Log-In | Acco

*** SALE *** | BRANDS | AR-9 | AR-15 | AR-10 | GLOCK STYLE PARTS | SIG SA

HOME > AR-15 > AR-15 LOWER PARTS >

## THE TRIGGERD COMPANY DISRUPTOR FORCED RESET TRIGGER - FRT AR-15 PARTISAN




View Larger Photo

Alternative Views:




*MSRP*: $325.00
Our Price: $299.99
SALE PRICE: $254.99

**Price with Selected Options**: **$254.99**

**Stock Status**: **In Stock**

Product Code: PT-DISRUPTOR

CHOOSE YOUR OPTIONS:

***** ADD A HEAVY BUFFER:**

Click to view another *** ADD A HEAVY BUFFER:

DO NOT ADD A HEAVY BUFFER.

**I UNDERSTAND AND AGREE:**

- [ ] I AM 18 YEARS OF AGE OR OLDER. 21+ IF MY STATE REQUIRES AND FOR PIST
- [ ] MY SHIPPING ADDRESS IS NOT LOCATED IN ANY OF THE CITIES OR STATES L
- [ ] MY BILLING ADDRESS MATCHES MY SHIPPING ADDRESS. ***NO EXCEPTION
- [ ] A 15% CANCELLATION FEE WILL APPLY IF WE HAVE TO CANCEL YOUR ORDE

Qty: 1

ADD TO CART

Add To Wishlist

MAS DEFENSE

MAS Defense LLC Contact Log-In | Acco

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAU

**PARTISAN TRIGGERS - DISRUPTOR FORCED RESET TRIGGER - FRT AR-15**
**MPN: 083456001005**

The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3 fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or f who value precision and control, it features a three-position safety selector with Safe, Semi- Automa Automatic modes. This versatile trigger delivers a responsive and confident shooting experience whi and safety for users.

**Specifications:**
Manufacturer: Partisan Triggers
Material: 4140 Chrome Moly Steel
Trigger Shape: Curved
Trigger Pull Weight: 3.75 - 4.1 lb
Gun Make: AR Platform
Gun Model: AR-15
Gun Type: Rifle
Color: Black or Green

**Features:**
- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long s
- 3 Position - Safe / Semi / FULL FRT
- Zero gunsmithing. Self-contained cassette style trigger drops directly into your lower
- CMP Service Rifle Match–compliant trigger pull weight.
- Compatible with most lowers; anti-walk pins recommended.
- **Requires a M16 / Auto Bolt Carrier Group**
- **Requires a H2 (recommend H3) Carbine Buffer** weight for firearms with carbine extensions and 1 standard rifle buffer for 20" A2 stocks.
***Choose a Buffer in the drop down box above.**
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation crite







48. Despite Defendants' marketing, Defendants' products are **not** one of Plaintiffs' FRT® branded products.

49. Defendants' unauthorized use of the FRT Marks to identify and promote their products is likely to mislead consumers into falsely believing that Defendants' products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

50. The only reason Defendants would use the FRT Marks in connection with their products is to trade on the goodwill Plaintiffs have developed in the FRT Marks, and thus Defendants' conduct is willful.

**COUNT I – INFRINGEMENT OF THE '247 PATENT**

51. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

52. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Atrius Selector.

53. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

54. An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Atrius Selector is part of a trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation. |

| ’247 Patent Claim 15 | The Atrius Selector |
| --- | --- |
| | <br>**Atrius Selector** |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius Selector (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange).<br><br>(Plaintiff-generated renderings of Atrius Selector here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. |

<table>
<tr><th>’247 Patent Claim 15</th><th>The Atrius Selector</th></tr>
<tr><td></td><td><br>Hammer Set Position<br><br>Hammer Released Position</td></tr>
<tr><td>a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,</td><td>The Atrius Selector (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear. The trigger member (brown) has a sear.</td></tr>
</table>

| ’247 Patent Claim 15 | The Atrius Selector |
| --- | --- |
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.  **Trigger Member Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position. |

| ’247 Patent Claim 15 | The Atrius Selector |
|---|---|
| |  **Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).  **Disconnector Hook Engaged** |
| and a cam having a cam lobe and adapted to be movably mounted in the | The Atrius Selector has a cam and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Atrius Selector, shown in yellow, in fire control mechanism pocket) |

| ’247 Patent Claim 15 | The Atrius Selector |
| --- | --- |
| fire control mechanism pocket, | <br>**Atrius Selector Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the “forced reset” semi-automatic mode. |

<table>
<tr><th>’247 Patent Claim 15</th><th>The Atrius Selector</th></tr>
<tr><td></td><td><br>Cam and Lobe Second Position</td></tr>
<tr><td>whereupon in a standard semi-automatic mode, said cam is in said first position,</td><td>During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position.<br></td></tr>
<tr><td>rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,</td><td>Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.</td></tr>
</table>

| **’247 Patent Claim 15** | **The Atrius Selector** |
| --- | --- |
| |  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger | . . . at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| member to fire the firearm, and |  |
| whereupon in a forced reset semi-automatic mode, | When in the "forced reset" semi-automatic mode,  |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | The cam is in the second position during at least part of the cycle and mechanically moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook. |

| ’247 Patent Claim 15 | The Atrius Selector |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull said trigger member (brown) to fire the firearm. |

| ’247 Patent Claim 15 | The Atrius Selector |
| --- | --- |
| |  |

55. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’247 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Atrius Selector. One example of this is the promotional material found on Defendants’ website (https://www.masdefense.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm; https://youtu.be/5o5zzdEWIGw?si=WqfmvOKItl5tTapS) that informs customers to install the Infringing Devices into an AR15:



MAS Defense LLC Contact Log-In | Account 0

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG

**Please Note:**
This Atrius FRS will not work with AR-10(LR308)/SR-25 platforms without significant gunsmithing. In the near future we will be coming out with a model specifically catered to these platforms.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

Atrius Development Group does not guarantee that our products are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.



56. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 15 of the ’247 Patent.

57. On information and belief, Defendants also contribute to the infringement of the ’247 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Atrius Selector, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’247 Patent.

58. Defendants have engaged in egregious infringement behavior with knowledge of the ’247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information

and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’247 Patent and that the ’247 Patent is valid at least through the service of Plaintiffs’ Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’247 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’247 Patent.

59. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’247 Patent pursuant to 35 U.S.C. § 271.

60. By their actions, Defendants’ infringement of the ’247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

61. By their actions, Defendants’ infringement of the ’247 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

62. Defendants’ infringement of the ’247 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

63. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

64. Plaintiffs have been substantially harmed by Defendants’ infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

## COUNT II – INFRINGEMENT OF THE ’784 PATENT

65. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

66. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’784 patent. Such unlicensed products include the Atrius Selector.

67. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

68. An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 1 of the ’784 Patent is illustrated in the chart below:

| ’784 Patent Claim 1 | The Atrius Selector |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Atrius Selector is part of a trigger mechanism and functions as an extended trigger member locking device.   |

| ’784 Patent Claim 1 | The Atrius Selector |
| --- | --- |
| | <br><br>**Atrius Selector Atrius Selector**<br>https://www.masdefense.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm; https://www.masdefense.com/ATRIUS-AMBI-FORCED-RESET-SELECTOR-p/adg-frs-ambi.htm; https://www.ghostgunjigs.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm; https://www.ghostgunjigs.com/ATRIUS-AMBI-FORCED-RESET-SELECTOR-p/adg-frs-ambi.htm<br><br>**Atrius Selector Installed**<br>(Plaintiff-generated renderings of Atrius Selector here and below; Locking member and bolt carrier shown here and below in section view for clarity) |

| ’784 Patent Claim 1 | The Atrius Selector |
| --- | --- |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Atrius Selector operates as a locking member and has a first position in which it locks the trigger member against pulling movement.<br><br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Atrius Selector is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br>**Unlocked Second Position** |

| ’784 Patent Claim 1 | The Atrius Selector |
|---|---|
| the locking member configured to be movably supported by a frame | The Atrius Selector is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).   |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Atrius Selector has an upward extending portion (yellow lever arm) configured to make actuating contact with a surface of the bolt carrier.  |

<table>
<tr><th>’784 Patent Claim 1</th><th>The Atrius Selector</th></tr>
<tr><td></td><td><br>The body portion (purple) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, “Forced Reset” Semi-Automatic) which are positively stopped by a detent (blue).<br><br>Section View of Body Portion (purple), Lower Receiver (grey), and Detent (blue)<br>Once installed, the body portion (purple) is movably supported by the lower receiver (grey) using the detent (blue).</td></tr>
<tr><td>such actuating contact causing the locking member to move from the first position to the second position,</td><td>The actuation causes the locking member to move from the first position to the second position.</td></tr>
</table>

| ’784 Patent Claim 1 | The Atrius Selector |
| --- | --- |
| |  **Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Atrius Selector has a body portion (purple) that is movably supported by the lower receiver.  |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Atrius Selector has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in yellow). |

| ’784 Patent Claim 1 | The Atrius Selector |
| --- | --- |
| | <br>Below illustrates the upward extending deflectable portion’s (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.<br> |

| ’784 Patent Claim 1 | The Atrius Selector |
|---|---|
| and a deflected position. | The lever is now shown deflected independent of the body.  |

69. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’784 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Atrius Selector while selling products. One example of this is the promotional material found on Defendants’ website (https://www.masdefense.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm; https://youtu.be/5o5zzdEWIGw?si=WqfmvOKItl5tTapS) that informs customers to install the Infringing Devices into an AR15:

MAS Defense LLC Contact Log-In | Account 0

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG

**Please Note:**
This Atrius FRS will not work with AR-10(LR308)/SR-25 platforms without significant gunsmithing. In the near future we will be coming out with a model specifically catered to these platforms.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

Atrius Development Group does not guarantee that our products are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.




70. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the ’784 Patent.

71. On information and belief, Defendants also contribute to the infringement of the ’784 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Atrius Selector, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’784 Patent.

72. Defendants have engaged in egregious infringement behavior with knowledge of the ’784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information

and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’784 Patent and that the ’784 Patent is valid at least through the service of Plaintiffs’ Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’784 Patent.

73. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’784 Patent pursuant to 35 U.S.C. § 271.

74. By their actions, Defendants’ infringement of the ’784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

75. By their actions, Defendants’ infringement of the ’784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

76. Defendants’ infringement of the ’784 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

77. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

78. Plaintiffs have been substantially harmed by Defendants’ infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

## COUNT III — INFRINGEMENT OF THE ’159 PATENT

79. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

80. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’159 patent. Such unlicensed products include the Atrius Selector.

81. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

82. An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 1 of the ’159 Patent is illustrated in the chart below:

| **’159 Patent Claim 1** | **The Atrius Selector** |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Atrius Selector is part of a firearm trigger mechanism that uses a bolt means. With the Atrius Selector installed, the trigger mechanism operates in a standard semi-automatic mode and a “forced reset” semi-automatic mode<br><br> |

| ’159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | <br><br>**Atrius Selector Atrius Selector**<br>https://www.masdefense.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm;<br>https://www.masdefense.com/ATRIUS-AMBI-FORCED-RESET-SELECTOR-p/adg-frs-ambi.htm;<br>https://www.ghostgunjigs.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm;<br>https://www.ghostgunjigs.com/ATRIUS-AMBI-FORCED-RESET-SELECTOR-p/adg-frs-ambi.htm<br><br>**Atrius Selector (Installed)**<br>(Plaintiff-generated renderings of the Atrius Selector here and below) |

| ’159 Patent Claim 1 | The Atrius Selector |
|---|---|
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius Selector (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange).<br><br><br>**Atrius Selector (Installed)** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.<br><br><br>**Hammer Set Position** |

| ’159 Patent Claim 1 | The Atrius Selector |
|---|---|
| |  **Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and | The Atrius Selector (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface.<br><br> **Trigger Member Set Position** |

| ’159 Patent Claim 1 | The Atrius Selector |
| --- | --- |
| released positions, | <br>**Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br><br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position. |

<table>
<tr><th>’159 Patent Claim 1</th><th>The Atrius Selector</th></tr>
<tr><td></td><td>

Trigger Member and Hammer Member Released Positions</td></tr>
<tr><td>the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and</td><td>The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).<br><br>Disconnector Hook Engaged</td></tr>
<tr><td>a cam having a cam lobe and adapted to be</td><td>The Atrius Selector has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism</td></tr>
</table>

| ’159 Patent Claim 1 | The Atrius Selector |
|---|---|
| movably mounted in the fire control mechanism pocket, | pocket. (*See* image above depicting Atrius Selector, shown in yellow, in fire control mechanism pocket)<br><br><br>**Atrius Selector Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position**<br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the “forced reset” semi-automatic mode. |

| ’159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | <br>**Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,<br><br>**Cam in the First (Semi-Automatic) Mode** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

<table>
<tr><th>’159 Patent Claim 1</th><th>The Atrius Selector</th></tr>
<tr><td></td><td><br>Disconnector Hook Catches the Hammer</td></tr>
<tr><td>and thereafter the bolt means moves forward into battery,</td><td>Thereafter, the bolt means moves forward into battery,<br></td></tr>
</table>

| ’159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | <br>**Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | . . . at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br>**Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second (“forced reset” semi-automatic) mode, |

| ’159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | <br>**Cam in the Second (“Forced Reset” Semi-Automatic) Mode** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook.<br> |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

| ’159 Patent Claim 1 | The Atrius Selector |
|---|---|
| |  |
| at which time the user can pull the trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member.  |

83. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’159 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Atrius Selector while selling products. One example of this is the promotional material found on Defendants' website (https://www.masdefense.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm; https://youtu.be/5o5zzdEWIGw?si=WqfmvOKItl5tTapS) that informs customers to install the Infringing Devices into an AR15:


MAS Defense LLC Contact Log-In | Account

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG

**Please Note:**
This Atrius FRS will not work with AR-10(LR308)/SR-25 platforms without significant gunsmithing. In the near future we will be coming out with a model specifically catered to these platforms.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

Atrius Development Group does not guarantee that our products are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.



84. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

85. On information and belief, Defendants also contribute to the infringement of the '159 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

Defendants of the components of the Atrius Selector, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’159 Patent.

86. Defendants have engaged in egregious infringement behavior with knowledge of the ’159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’159 Patent and that the ’159 Patent is valid at least through the service of Plaintiffs’ Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’159 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’159 Patent.

87. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’159 Patent pursuant to 35 U.S.C. § 271.

88. By their actions, Defendants’ infringement of the ’159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

89. By their actions, Defendants’ infringement of the ’159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

90. Defendants’ infringement of the ’159 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

91. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

92. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV — INFRINGEMENT OF THE '223 PATENT

93. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

94. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '223 patent. Such unlicensed products include the Disruptor.

95. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

96. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '223 Patent is illustrated in the chart below:

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Disruptor is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | <br>https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm<br>https://www.ghostgunjigs.com/PARTISAN-TRIGGERS-DISRUPTOR-p/pt-disruptor.htm<br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br> |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Disruptor includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| |     (Plaintiff–generated renderings of the Disruptor here and below) |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Disruptor includes a hammer (blue) with a sear notch and is mounted in the housing to pivot on a transverse axis. |

| ’223 Patent Claim 4 | The Disruptor |
| --- | --- |
| between set and | <br><br>**Set Position** |
| released positions; | <br>**Released Position** |

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis | The Disruptor has a trigger member (green) that has a sear and is mounted in a housing to pivot on a transverse axis. |
| between set |  **Set Position** |
| and released positions, |  **Released Position** |
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| |  |
| the contact causing the trigger member to be forced to the set position; | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position.<br> |

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| |  |
| a locking bar pivotally mounted in the housing | The Disruptor includes a locking bar (red) that is pivotally mounted in the housing.   |
| and spring biased toward a first position<br>in which the locking bar mechanically blocks the trigger member from moving to the released position, | The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position. |

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| | <br>**First position Mechanically Blocked** |
| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position | The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position. |
| in which the trigger member can be moved by an external force to the released position. | In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.<br> |

97. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’223 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products. One example of this is the promotional material found on Defendants' website (https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm; https://www.youtube.com/watch?v=E7j7MoI9gWw) that informs customers to install the Disruptor into an AR15:

MAS Defense LLC | Contact | Log-In | Account

*** SALE *** | BRANDS | AR-9 | AR-15 | AR-10 | GLOCK STYLE PARTS | SIG SAUER | SIGHTS | TOOLS | SWAG

**PARTISAN TRIGGERS - DISRUPTOR FORCED RESET TRIGGER - FRT AR-15**
**MPN: 083456001005**

The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

**Specifications:**
Manufacturer: Partisan Triggers
Material: 4140 Chrome Moly Steel
Trigger Shape: Curved
Trigger Pull Weight: 3.75 - 4.1 lb
Gun Make: AR Platform
Gun Model: AR-15
Gun Type: Rifle
Color: Black or Green

**Features:**
- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- 3 Position - Safe / Semi / FULL FRT
- Zero gunsmithing. Self-contained cassette style trigger drops directly into your lower
- CMP Service Rifle Match–compliant trigger pull weight.
- Compatible with most lowers; anti-walk pins recommended.
- **Requires a M16 / Auto Bolt Carrier Group**
- **Requires a H2 (recommend H3) Carbine Buffer** weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20" A2 stocks.
***Choose a Buffer in the drop down box above.**
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

MAS Defense does not guarantee that the products we sell are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.

**Click the box below to view the Disruptor on Partisan's YouTube channel.**




Partisan Disruptor FRT

98. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 4 of the ’223 Patent.

99. On information and belief, Defendants also contribute to the infringement of the ’223 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’223 Patent.

100. Defendants have engaged in egregious infringement behavior with knowledge of the ’223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’223 Patent and that the ’223 Patent is valid at least through the service of Plaintiffs’ Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’223 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’223 Patent.

101. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’223 Patent pursuant to 35 U.S.C. § 271.

102. By their actions, Defendants’ infringement of the ’223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

103. By their actions, Defendants' infringement of the '223 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

104. Defendants' infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

105. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

106. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT V — INFRINGEMENT OF THE '003 PATENT**

107. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

108. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent. Such unlicensed products include the Disruptor.

109. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

110. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '003 patent is illustrated in the chart below:

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism.   https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm https://www.ghostgunjigs.com/PARTISAN-TRIGGERS-DISRUPTOR-p/pt-disruptor.htm |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Disruptor includes a housing (black) that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.   The Disruptor is sold with hammer and trigger pins. |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| | <br> |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.<br><br><br>(Plaintiff-generated renderings of the Disruptor here and below) |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| between set and<br><br>released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br>**Set Position**<br><br>**Released Position** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin | The Disruptor includes a trigger member (green) that has a sear and is mounted in the housing to pivot on the trigger member pin |

| '003 Patent Claim 4 | The Disruptor |
|---|---|
| between set<br><br>and released positions, | <br>**Set Position**<br><br>**Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

| ’003 Patent Claim 4 | The Disruptor |
| --- | --- |
| |   |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position.  |

| '003 Patent Claim 4 | The Disruptor |
| --- | --- |
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position  **Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |  **Released Position** |
| a disconnector having a hook for engaging said hammer | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook.   |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (green) member pin. |

| ’003 Patent Claim 4 | The Disruptor |
| --- | --- |
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Disruptor has a locking member (red) that is mounted in the housing and it pivots on a transverse locking member pin.   |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled. |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |  **First Position Mechanically Blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled.  **Second Position Not Mechanically Blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and “forced reset” semi-automatic positions.   |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook.  **Standard Semi-automatic Position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said | When the Disruptor is in the “forced reset” semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position. |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| trigger member to be forced to said set position, | <br>**Trigger Pulled to the Rear, Hammer First Touches the Trigger**<br><br>**Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook. |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |  **Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger.  |

111. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’003 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging,

advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products. One example of this is the promotional material found on Defendants' website (https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm; https://www.youtube.com/watch?v=E7j7MoI9gWw) that informs customers to install the Disruptor into an AR15:

MAS DEFENSE

MAS Defense LLC Contact Log-In | Account 0

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG

**PARTISAN TRIGGERS - DISRUPTOR FORCED RESET TRIGGER - FRT AR-15**
**MPN: 083456001005**

The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

**Specifications:**
Manufacturer: Partisan Triggers
Material: 4140 Chrome Moly Steel
Trigger Shape: Curved
Trigger Pull Weight: 3.75 - 4.1 lb
Gun Make: AR Platform
Gun Model: AR-15
Gun Type: Rifle
Color: Black or Green

**Features:**
- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- 3 Position - Safe / Semi / FULL FRT
- Zero gunsmithing. Self-contained cassette style trigger drops directly into your lower
- CMP Service Rifle Match–compliant trigger pull weight.
- Compatible with most lowers; anti-walk pins recommended.
- **Requires a M16 / Auto Bolt Carrier Group**
- **Requires a H2 (recommend H3) Carbine Buffer** weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20" A2 stocks.
***__Choose a Buffer in the drop down box above.__**
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

MAS Defense does not guarantee that the products we sell are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.

**Click the box below to view the Disruptor on Partisan's YouTube channel.**

This video is age-restricted and only available on YouTube. Learn more
Watch on YouTube

Partisan Disruptor FRT

112. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 4 of the ’003 Patent.

113. On information and belief, Defendants also contribute to the infringement of the ’003 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’003 Patent.

114. Defendants have engaged in egregious infringement behavior with knowledge of the ’003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’003 Patent and that the ’003 Patent is valid at least through the service of Plaintiffs’ Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’003 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’003 Patent.

115. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’003 Patent pursuant to 35 U.S.C. § 271.

116. By their actions, Defendants’ infringement of the ’003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

117. By their actions, Defendants' infringement of the '003 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

118. Defendants' infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

119. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

120. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT VI — INFRINGEMENT OF THE '336 PATENT**

121. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

122. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 patent. Such unlicensed products include the Disruptor.

123. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents.

124. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 3 of the '336 patent is illustrated in the chart below:

<table>
<tr><th>’336 Patent Claim 3</th><th>The Disruptor</th></tr>
<tr><td>3. A firearm trigger mechanism comprising:</td><td>The Disruptor is a firearm trigger mechanism.<br><br><br>https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm<br>https://www.ghostgunjigs.com/PARTISAN-TRIGGERS-DISRUPTOR-p/pt-disruptor.htm</td></tr>
<tr><td>a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin,</td><td>The Disruptor includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.<br><br><br>The Infringing Devise is sold with hammer and trigger pins.</td></tr>
</table>

| '336 Patent Claim 3 | The Disruptor |
|---|---|
| |  |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.  (Plaintiff-generated renderings of the Disruptor here and below) |

<table>
<tr><th>’336 Patent Claim 3</th><th>The Disruptor</th></tr>
<tr><td>between set and</td><td><br>Set Position</td></tr>
<tr><td>released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,</td><td><br>Released Position</td></tr>
<tr><td>a trigger member having a sear and mounted in said housing to pivot on said trigger member pin</td><td>The Disruptor includes a trigger member (green) that has a sear and is mounted in the housing to pivot on the trigger member pin</td></tr>
</table>

| ’336 Patent Claim 3 | The Disruptor |
| --- | --- |
| between set |  **Set Position** |
| and released positions, |  **Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

| ’336 Patent Claim 3 | The Disruptor |
| --- | --- |
| |  |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position<br> |

| ’336 Patent Claim 3 | The Disruptor |
| --- | --- |
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position<br><br>**Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position |

| ’336 Patent Claim 3 | The Disruptor |
| --- | --- |
| | <br>**Released Position** |
| a disconnector having a hook for engaging said hammer | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook<br><br> |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (green) member pin |

| ’336 Patent Claim 3 | The Disruptor |
|---|---|
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Disruptor has a locking member (red) that is mounted in the housing and it pivots on a transverse locking member pin.   |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

<table>
<tr><th>’336 Patent Claim 3</th><th>The Disruptor</th></tr>
<tr><td></td><td><br>First Position Mechanically Blocked</td></tr>
<tr><td>and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,</td><td>When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled.<br><br>Second Position Not Mechanically Blocked</td></tr>
<tr><td>said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and</td><td>The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.</td></tr>
<tr><td>a safety selector adapted to be mounted in a fire control mechanism pocket of a</td><td>The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a</td></tr>
</table>

| ’336 Patent Claim 3 | The Disruptor |
|---|---|
| receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | receiver to pivot between safe, standard semi-automatic, and “forced reset” semi-automatic positions.   |
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | While in the “forced reset” semi-automatic position the disconnect (orange) moves to a position that does not allow the disconnector hook to catch the hammer (blue) hook  **“Forced Reset” Semi-Automatic Position** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook |

| ’336 Patent Claim 3 | The Disruptor |
|---|---|
| pull said trigger member to fire the firearm, and | <br>**Standard Semi-Automatic Position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Disruptor is in the “forced reset” semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position.<br><br>**Trigger Pulled to the Rear, Hammer First Touches the Trigger** |

| ’336 Patent Claim 3 | The Disruptor |
|---|---|
| | <br>**Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook<br><br>**Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger |

125. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’336 patent.

Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products. One example of this is the promotional material found on Defendants' website (https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm; https://www.youtube.com/watch?v=E7j7MoI9gWw) that informs customers to install the Disruptor into an AR15:



MAS DEFENSE

MAS Defense LLC Contact Log-In | Account 0

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG

**PARTISAN TRIGGERS - DISRUPTOR FORCED RESET TRIGGER - FRT AR-15**
**MPN: 083456001005**

The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

**Specifications:**
Manufacturer: Partisan Triggers
Material: 4140 Chrome Moly Steel
Trigger Shape: Curved
Trigger Pull Weight: 3.75 - 4.1 lb
Gun Make: AR Platform
Gun Model: AR-15
Gun Type: Rifle
Color: Black or Green

**Features:**
- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- 3 Position - Safe / Semi / FULL FRT
- Zero gunsmithing. Self-contained cassette style trigger drops directly into your lower
- CMP Service Rifle Match–compliant trigger pull weight.
- Compatible with most lowers; anti-walk pins recommended.
- **Requires a M16 / Auto Bolt Carrier Group**
- **Requires a H2 (recommend H3) Carbine Buffer** weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20" A2 stocks.
***__Choose a Buffer in the drop down box above.__**
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

MAS Defense does not guarantee that the products we sell are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.

**Click the box below to view the Disruptor on Partisan's YouTube channel.**

This video is age-restricted and only available on YouTube. Learn more
Watch on YouTube

Partisan Disruptor FRT

126. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 3 of the ’336 Patent.

127. On information and belief, Defendants also contribute to the infringement of the ’336 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’336 Patent.

128. Defendants have engaged in egregious infringement behavior with knowledge of the ’336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’336 Patent and that the ’336 Patent is valid at least through the service of Plaintiffs’ Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’336 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’336 Patent.

129. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’336 Patent pursuant to 35 U.S.C. § 271.

130. By their actions, Defendants’ infringement of the ’336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

131. By their actions, Defendants' infringement of the '336 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

132. Defendants' infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

133. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

134. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT VII — INFRINGEMENT OF THE '807 PATENT**

135. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

136. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Disruptor.

137. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

138. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 1 of the ’807 patent is illustrated in the chart below:

| ’807 Patent Claim 1 | The Disruptor |
|---|---|
| A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism.<br><br>https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm<br>https://www.ghostgunjigs.com/PARTISAN-TRIGGERS-DISRUPTOR-p/pt-disruptor.htm |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

<table>
<tr><th>’807 Patent Claim 1</th><th>The Disruptor</th></tr>
<tr><td><br><br>between set and</td><td>

(Plaintiff-generated renderings of the Disruptor here and below)

Set Position</td></tr>
</table>

| ’807 Patent Claim 1 | The Disruptor |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br>**Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br>between set | The Disruptor includes a trigger member (green) that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>**Set Position** |

| ’807 Patent Claim 1 | The Disruptor |
|---|---|
| and released positions, |  **Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue)   |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position |

| ’807 Patent Claim 1 | The Disruptor |
|---|---|
| |   |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position  |

| ’807 Patent Claim 1 | The Disruptor |
|---|---|
| | **Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position  **Released Position** |
| a disconnector having a hook for engaging said hammer hook | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook   |
| and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis |

<table>
<tr><th>’807 Patent Claim 1</th><th>The Disruptor</th></tr>
<tr><td></td><td></td></tr>
<tr><td>a locking member adapted to be movably mounted in the fire control mechanism pocket,</td><td>The Disruptor has a locking member (red) that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position.<br><br></td></tr>
<tr><td>said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position</td><td>When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled</td></tr>
</table>

| ’807 Patent Claim 1 | The Disruptor |
| --- | --- |
| | <br>**First Position Mechanically Blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,<br><br>said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled<br><br>**Second Position Not Mechanically Blocked**<br>The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |

| ’807 Patent Claim 1 | The Disruptor |
|---|---|
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and “forced reset” semi-automatic positions.<br><br> |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook.<br><br>**Standard Semi-Automatic Position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Disruptor is in the “forced reset” semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position. |

| ’807 Patent Claim 1 | The Disruptor |
| --- | --- |
| | <br>**Trigger Pulled to the Rear, Hammer First Touches the Trigger**<br><br>**Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook. |

| ’807 Patent Claim 1 | The Disruptor |
|---|---|
| |  **Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger.  |

139. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’807 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling

products. One example of this is the promotional material found on Defendants' website (https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm; https://www.youtube.com/watch?v=E7j7MoI9gWw) that informs customers to install the Disruptor into an AR15:

MAS Defense LLC | Contact | Log-In | Account

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG

**PARTISAN TRIGGERS - DISRUPTOR FORCED RESET TRIGGER - FRT AR-15**
**MPN: 083456001005**

The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

**Specifications:**
Manufacturer: Partisan Triggers
Material: 4140 Chrome Moly Steel
Trigger Shape: Curved
Trigger Pull Weight: 3.75 - 4.1 lb
Gun Make: AR Platform
Gun Model: AR-15
Gun Type: Rifle
Color: Black or Green

**Features:**
- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- 3 Position - Safe / Semi / FULL FRT
- Zero gunsmithing. Self-contained cassette style trigger drops directly into your lower
- CMP Service Rifle Match–compliant trigger pull weight.
- Compatible with most lowers; anti-walk pins recommended.
- **Requires a M16 / Auto Bolt Carrier Group**
- **Requires a H2 (recommend H3) Carbine Buffer** weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20" A2 stocks.
***__Choose a Buffer in the drop down box above.__**
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

MAS Defense does not guarantee that the products we sell are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.

**Click the box below to view the Disruptor on Partisan's YouTube channel.**




Partisan Disruptor FRT

140. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '807 Patent.

141. On information and belief, Defendants also contribute to the infringement of the ’807 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’807 Patent.

142. Defendants have engaged in egregious infringement behavior with knowledge of the ’807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’807 Patent and that the ’807 Patent is valid at least through the service of Plaintiffs’ Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’807 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’807 Patent.

143. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’807 Patent pursuant to 35 U.S.C. § 271.

144. By their actions, Defendants’ infringement of the ’807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

145. By their actions, Defendants’ infringement of the ’807 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

146. Defendants' infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

147. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

148. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT VIII — INFRINGEMENT OF THE '403 PATENT**

149. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

150. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Infringing Devices.

151. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

152. An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| ’403 Patent Claim 38 | The Atrius Selector |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Atrius Selector is part of a trigger mechanism.<br><br><br><br><br>**Atrius Selector Atrius Selector**<br><br>https://www.masdefense.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm;<br>https://www.masdefense.com/ATRIUS-AMBI-FORCED-RESET-SELECTOR-p/adg-frs-ambi.htm;<br>https://www.ghostgunjigs.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm;<br>https://www.ghostgunjigs.com/ATRIUS-AMBI-FORCED-RESET-SELECTOR-p/adg-frs-ambi.htm |

| ’403 Patent Claim 38 | The Atrius Selector |
| --- | --- |
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Atrius Selector (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis.<br><br>**Atrius Selector (Installed)**<br>(Plaintiff-generated renderings of Atrius Selector here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Atrius Selector is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown).<br><br>**Disconnector and Trigger Member** |

| ’403 Patent Claim 38 | The Atrius Selector |
|---|---|
| a safety selector adapted to be movable between a standard semi-automatic position | The Atrius Selector is a safety selector adapted to be movable between a standard semi-automatic position,<br><br>**Atrius Selector (installed) in Standard Semi-Automatic Position** |
| and a forced reset semi-automatic position, | . . . and a “forced reset” semi-automatic position,<br><br>**Atrius Selector (installed) in “Forced Reset” Semi-Automatic Position** |

| ’403 Patent Claim 38 | The Atrius Selector |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated.  |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange).  |

| ’403 Patent Claim 38 | The Atrius Selector |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm.  |

153. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 38 of the ’403 Patent is illustrated in the chart below:

| ’403 Patent Claim 38 | The Disruptor |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Disruptor is part of a trigger mechanism.<br><br><br>**Disruptor**<br>https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm<br>https://www.ghostgunjigs.com/PARTISAN-TRIGGERS-DISRUPTOR-p/pt-disruptor.htm |
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Disruptor has a hammer (blue) that has a hammer hook and pivots on a transverse axis.<br><br>**Disruptor (Installed)**<br>(Plaintiff-generated renderings of Disruptor here and below) |

| ’403 Patent Claim 38 | The Disruptor |
|---|---|
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; | The Disruptor has a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis.  **Disconnector (orange)** |
| a trigger member; and | The Disruptor has a trigger member (green) which has a disconnector hook and pivots on a transverse disconnector pivot axis  **Trigger Member (green)** |

<table>
<tr><th>’403 Patent Claim 38</th><th>The Disruptor</th></tr>
<tr><td>a safety selector adapted to be movable between a standard semi-automatic position</td><td>The Disruptor has a safety selector adapted to be movable between a (standard semi-automatic) position,<br><br>Disruptor (installed) in Standard Semi-Automatic Position</td></tr>
<tr><td>and a forced reset semi-automatic position,</td><td>. . . and a “forced reset” semi-automatic position,<br><br>Disruptor (installed) in “Forced Reset” Semi-Automatic Position</td></tr>
</table>

| ’403 Patent Claim 38 | The Disruptor |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (green) is rearwardly actuated.  |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (blue) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),  |

| ’403 Patent Claim 38 | The Disruptor |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (green) must be reduced to permit the trigger member to then be actuated to fire a firearm.  |

154. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’403 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products. One example of this is the promotional material found on Defendants’ website (https://www.masdefense.com/ATRIUS-FORCED-RESET-SELECTOR-p/adg-frs.htm; https://youtu.be/5o5zzdEWIGw?si=WqfmvOKItl5tTapS; https://www.masdefense.com/DISRUPTOR-p/pt-disruptor.htm; https://www.youtube.com/watch?v=E7j7MoI9gWw) that informs customers to install the Disruptor into an AR15:

MAS Defense LLC Contact Log-In | Account 0

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG

**PARTISAN TRIGGERS - DISRUPTOR FORCED RESET TRIGGER - FRT AR-15**
**MPN: 083456001005**

The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

**Specifications:**
Manufacturer: Partisan Triggers
Material: 4140 Chrome Moly Steel
Trigger Shape: Curved
Trigger Pull Weight: 3.75 - 4.1 lb
Gun Make: AR Platform
Gun Model: AR-15
Gun Type: Rifle
Color: Black or Green

**Features:**
- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- 3 Position - Safe / Semi / FULL FRT
- Zero gunsmithing. Self-contained cassette style trigger drops directly into your lower
- CMP Service Rifle Match–compliant trigger pull weight.
- Compatible with most lowers; anti-walk pins recommended.
- **Requires a M16 / Auto Bolt Carrier Group**
- **Requires a H2 (recommend H3) Carbine Buffer** weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20" A2 stocks.

***__Choose a Buffer in the drop down box above.__**
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

MAS Defense does not guarantee that the products we sell are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.

**Click the box below to view the Disruptor on Partisan's YouTube channel.**




Partisan Disruptor FRT

MAS Defense LLC | Contact | Log-In | Account

*** SALE *** BRANDS AR-9 AR-15 AR-10 GLOCK STYLE PARTS SIG SAUER SIGHTS TOOLS SWAG

**Please Note:**
This Atrius FRS will not work with AR-10(LR308)/SR-25 platforms without significant gunsmithing. In the near future we will be coming out with a model specifically catered to these platforms.

**Important:**
All modifications should be performed by a qualified gunsmith. Improper installation or unauthorized modification may result in malfunction or unsafe operation. Use and modify at your own risk. The manufacturer assumes no liability for damages or injuries resulting from incorrect installation or use outside of intended specifications.

**Legal Notice and Disclaimer:**
When buying this product you are affirming that you understand all federal, state, and local gun laws that apply to you. Laws surrounding firearms and their parts or accessories vary between each state so it is your responsibility to know what is legal in your area.

Atrius Development Group does not guarantee that our products are legal where you live, and we are not responsible for any misuse, illegal activity, or violations of the law by customers. By completing your purchase, you agree that you are complying with all applicable regulations.




155. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

156. On information and belief, Defendants also contribute to the infringement of the '403 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Devices, such as the trigger assembly or the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '403 Patent.

157. Defendants have engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information

and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’403 Patent and that the ’403 Patent is valid at least through the service of Plaintiffs’ Complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’403 Patent.

158. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’403 Patent pursuant to 35 U.S.C. § 271.

159. By their actions, Defendants’ infringement of the ’403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

160. By their actions, Defendants’ infringement of the ’403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

161. Defendants’ infringement of the ’403 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

162. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

163. Plaintiffs have been substantially harmed by Defendants’ infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

**COUNT IX — FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114(1)**

164. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

165. As described above, Plaintiff RBTM is the owner and Plaintiff Rare Breed is the exclusive licensee of the FRT Marks in connection with firearm triggers.

166. The federal trademark registrations for the registered FRT Marks, as detailed above, are in full force and effect. Plaintiff RBTM owns all right, title, and interest in and to these federal trademark registrations.

167. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

168. The reputation Plaintiffs have built in the FRT Marks is of great value to Plaintiffs.

169. Plaintiffs' use of and rights in the FRT Marks predate any use by Defendants of FRT.

170. Defendants are wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

171. Defendants' use of the FRT Marks was and is without Plaintiffs' consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

172. Defendants' unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for

which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

173. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the FRT Marks and any mark confusingly similar to the FRT Marks.

174. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT X — FALSE DESIGNATION OF ORIGIN**
**15 U.S.C. § 1125(A)**

175. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

176. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of the FRT Marks by Defendants.

177. Plaintiffs' common law rights in the FRT Marks predate Defendants' infringing use of the FRT Marks and any other confusingly similar name or mark comprised of or containing FRT.

178. Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

179. Defendants' actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendants' goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiffs. These actions constitute

a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

180. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

181. Defendants' acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

182. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

183. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT XI — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

184. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

185. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous use of the marks since at least as early 2020, prior to any use of the FRT Marks by Defendants.

186. Plaintiffs' common law rights in the FRT Marks predate Defendants' infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

187. Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

188. Defendants' use of the FRT Marks was and is without Plaintiffs' consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' goods and services. As such, Defendants' acts constitute trademark infringement and unfair competition under common law.

189. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

190. Defendants' acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

191. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using FRT or any other mark confusingly similar to the FRT Marks.

192. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendants;

b. Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. That Defendants willfully infringed Plaintiffs' registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e. That Defendants committed willful acts of false designation of origin through their unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f. That Defendants engaged in conduct constituting unfair competition under applicable law;

g. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

h. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents; (2) using the FRT Marks (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

i. Consistent with the above, order Defendants to (1) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendants' custody or control; and (2) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

j. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

k. An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

l. An award of all profits received by Defendants from sales and revenues of any kind made as a result of their trademark infringement and unfair competition;

m. An award of all damages sustained by Plaintiffs as a result of Defendants' infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

n. A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

o. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: July 21, 2026

Respectfully submitted,

*<u>/s/ Bret T. Winterle</u>*
Bret T. Winterle
(North Carolina Bar No. 32,051)
(MDNC Bar No. 032051)
**FISH & RICHARDSON, P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Matthew A. Colvin (Pro Hac Vice)
Texas Bar No. 24087331
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Glenn D. Bellamy
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Decker A. Cammack (Pro Hac Vice Application forthcoming)
Texas Bar No. 24036311
**WHITAKER, CHALK, SWINDLE & SCHWARTZ, PLLC**
301 Commerce Street, Suite 3500
Fort Worth, TX 76102
E-mail: dcammack@whitakerchalk.com
Tel: (817) 878-0500
Fax: (817) 878-0501

*Attorneys for Plaintiffs*
*ABC IP, LLC, Rare Breed Triggers, Inc., and RBTM LLC*